UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRYSTAL McCLAIN,

      Plaintiff,

v.                                       Civil Case No. 19-12722
                                       Honorable Linda V. Parker

FORD MOTOR COMPANY,

      Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [48]**

Plaintiff, Crystal McClain, worked for Defendant, Ford Motor Company, from 2012 to 2019.  She brings this civil rights lawsuit for discrimination she allegedly experienced in the course of her employment at Defendant's Woodhaven, Michigan, Stamping Plant between 2017 and 2019.  In the Amended Complaint, Plaintiff alleges the following claims: (1) retaliation in violation of Michigan's Elliot-Larsen Civil Rights Act ("ELCRA") (Count I); (2) disparate treatment in violation of the ELCRA (Count II); (3) hostile work environment in violation of the ELCRA (Count III); (4) hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42. U.S.C. § 2000e-2 *et seq*. ("Title VII") (Count IV); (5) disparate treatment in violation of Title VII (Count V); and (6) retaliation in violation of Title VII (Count VI).  (ECF No. 45.)

On September 17, 2019, Plaintiff filed the original Complaint. (ECF No. 1.) On March 25, 2021, Plaintiff filed a Motion for Leave to File an Amended Complaint, ECF No. 36, which the Court granted in part and denied in part.  (ECF No. 40.)  Specifically, the Court granted Plaintiff leave to amend her complaint regarding the claims involving alleged violations of ELCRA and Title VII.  (*Id.* at Pg ID 496-97.)  However, the order also precluded Plaintiff from amending her complaint to include claims involving alleged violations of the American with Disabilities Act ("ADA"), the Michigan Persons with Disabilities Act ("PWDCRA"), Michigan's Whistleblower s Protection Act ("WPA"), and her termination in violation of public policy.[1]

The matter is presently before the Court on Defendant's Motion for Summary Judgment, filed on May 26, 2022.  (ECF No. 48.)  The motion has been fully briefed.  (ECF Nos. 49, 51.)  Finding the facts and legal arguments sufficiently presented by the parties, the Court is dispensing with oral argument with respect to the parties' motions pursuant to Eastern District of Michigan Local Rule 7.1(f).  For the reasons that follow, the Court is granting Defendant's motion.

---

[1] The Court's March 7 order also precludes Plaintiff from alleging any facts that were related to those claims, including anything concerning Plaintiff's complaints to her supervisor about unsafe work activities, ECF No. 45 at Pg ID 542-543, ¶¶ 64-67, as they were raised to support her wrongful termination and are "completely unrelated to the claims raised in her initial Complaint."  (ECF No. 40 at Pg ID 493.)

2

## BACKGROUND

Plaintiff is an African American woman who was employed by Defendant at various automobile production facilities from March 2012 until her termination in December 2019.  (ECF No. 39-2; ECF No. 39-4, Pg ID 372.)  Plaintiff alleges that her problems at work began in December 2017, shortly after she transferred from Defendant's Chicago Assembly Plant to its Woodhaven, Michigan, Stamping Plant, and that they intensified the following year.  (Amend. Compl. ECF No. 45 at Pg ID 532, ¶ 11).

 For example, in July 2018, Plaintiff alleges that her superior, Kyle, approached her and told her she was not allowed to sit while working, despite the fact that she had seen male co-workers be permitted to sit.  (*Id.* at Pg ID 533, ¶ 17-18).  When Plaintiff notified Kyle that other employees were allowed to sit, Plaintiff alleges that he "screamed in a hostile tone."  (*Id.* ¶ 17.)  Plaintiff further alleges that, a few months later, Kyle began treating her poorly after she complained about a co-worker who showed her explicit photographs on his mobile phone, (*Id.* ¶¶ 18-28), and subsequently made crude sexual comments to Plaintiff. During the week of October 8, 2018, Plaintiff alleges that the same co-worker arrived at work and told her to "stay away from me" and called her "contagious." (*Id.* at Pg ID 535, ¶ 27.)

On October 30, 2018, after filing numerous complaints with Human Resources, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment, retaliation for internally reporting that harassment, and a hostile work environment. (ECF No. 38-2). One month later, on November 29, 2018, Plaintiff amended her charge to include discrimination based on race. (ECF No. 39-2). On July 10, 2019, Plaintiff filed a second EEOC charge alleging continued retaliation, as well as discrimination based on race and disability. (ECF No. 39-1). The EEOC issued a Notice of Right to Sue for each charge on October 1, 2019. (ECF No. 38-5).

Plaintiff alleges that the discrimination and harassment continued until her termination in December of 2019.

## LEGAL STANDARD

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The central inquiry when evaluating a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the

4

existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252. Courts must view evidence in the record in the light most favorable to the nonmoving party and draw "all reasonable inferences" to that party's benefit. *See Int'l Union v. Cummins, Inc.,* 434 F.3d 478, 483 (6th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

## ANALYSIS

Defendant argues that this Court should enter summary judgment on its behalf because Plaintiff failed to provide sufficient evidence (1) that Defendant took any adverse employment actions against Plaintiff in support of her race and sex discrimination claims, (2) that Defendant created a hostile work environment based on Plaintiff's race or sex, or (3) that Defendant retaliated against Plaintiff

pursuant to Title VII and Michigan's ELCRA.  (ECF No. 48 at Pg ID 607.)

Assuming Plaintiff's facts to be true, the Court agrees.

## I.     Disparate Treatment under Title VII and Michigan's ELCRA

Defendant maintains that Plaintiff's disparate treatment claims should be

dismissed because she is unable to show that she suffered an adverse action, or any

discrimination based on race or sex.  Generally, the Sixth Circuit analyzes

discrimination claims brought under the ELRCA under the same standards as

discrimination under Title VII.  *See Jackson v. Quanex Corp.*, 191 F.3d 647, 658

(6th Cir. 1999).  Title VII makes it unlawful to "discharge any individual, or

otherwise to discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's race,

color, religion, sex, or national origin[.]"  42 U.S.C. § 2000e-2(a)(1).

 "The Supreme Court has recognized two distinct types of Title VII

employment discrimination: 'disparate treatment' and 'disparate impact.'"

*Serrano v. Cintas Corp.*, 699 F.3d 884, 892 (6th Cir. 2012) (quoting *Huguley v.*

*Gen. Motors Corp.*, 52 F.3d 1364, 1370 (6th Cir.1995)).  To bring a disparate

treatment claim, a plaintiff must prove "an employer's discriminatory motive and

connect that motive to a particular adverse employment decision."  *Id.*  In other

words, "the key question is always whether ... the plaintiff has presented sufficient

evidence that he or she suffered an adverse employment action under

6

circumstances which give rise to an inference of unlawful discrimination." *Tartt v. Wilson Cnty., Tennessee*, 592 F. App'x 441, 445 (6th Cir. 2014) (quoting *Thompson v. UHHS Richmond Heights Hosp., Inc.*, 372 F. App'x 620, 624 (6th Cir. 2010)).

To show that an adverse action has occurred, a plaintiff must provide evidence of a "*significant* change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a *significant* change in benefits." *White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789, 798 (6th Cir. 2004) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)) (emphasis added).

To support her claim for an adverse action, Plaintiff argues the following actions are sufficient:

(1) Not being allowed to sit, drink, or have her phone like her white, male co-workers;

(2) being refused a transfer out of the area where she was being harassed;

(3) being denied coverage to use the bathroom;

(4) being moved from day shift to afternoon shift where she would be surrounded by her abusers;

(5) being given worse jobs than employees with less seniority;

(6) being sent to medical for drug testing after she was lied about by Defendant's managers;

7

(7)     being harassed on a daily basis; and finally

(7)     [sic] having her financial wellbeing jeopardized by being denied overtime, not being paid unemployment when she was laid off, and being removed from work subject to mental health clearance.

(ECF No. 49 at Pg ID 1527.)  None of Plaintiff's claims rise to the level of being "significant" in nature.  *See White*, 364 F.3d at 798.  Rather, the allegations are merely workplace disputes, which would not be considered an adverse action for purposes of Title VII or the ELRCA.  *See, e.g., Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007) ("confrontation" in which "harsh words were exchanged" is not an "adverse action"); *Worthy v. Materials Processing, Inc.*, 433 F. App'x 374, 375 (6th Cir. 2011) (concluding that the denial of an employee's bathroom break was not an adverse action).

Further, in Plaintiff's deposition, she testified that she has never been demoted or received any loss of pay and benefits.  (*See* Ex. A, ECF No. 48-2 at Pg ID 773.)  Regarding any other significant changes to her employment or responsibilities, Plaintiff failed to provide sufficient evidence, whether direct or circumstantial, to support that any changes occurred.

Finally, Defendant argues that Plaintiff "fails to support her claim of lost overtime with supporting evidence."  (ECF No. 48 at Pg ID 632 n.15.)  According to the declaration of Michelle Mau, HR Labor Supervisor, she investigated the

claims that Plaintiff was denied overtime on two separate occasions.  (ECF No. 48-4 at Pg ID 876-77, ¶ 49.)  As a result of the investigation, Ms. Mau determined that Plaintiff was not entitled to overtime because she "admitted she did not adhere to the required process to work overtime," and on the other occasion, Plaintiff was offered overtime but "refused it." (*Id.*)  The Court agrees with Defendant that Plaintiff has failed to support her claim for lost overtime payments.  As such, a reasonable jury could not find the existence of an adverse action to her employment.  *See, e.g., Broska v. Henderson*, 70 F. App'x 262, 268 (6th Cir. 2003) (holding no adverse action where plaintiff "put forth virtually no evidence on the overtime issue"); *Montgomery v. Honda of Am. Mfg., Inc.*, 47 F. App'x 342, 349 (6th Cir. 2002) (no adverse action because the plaintiff "ha[d] not produced evidence sufficient to raise a genuine issue of material fact as to whether he was denied overtime opportunities").

## II.    Hostile Work Environment

To allege a claim for a hostile work environment based on race or sex, a plaintiff must establish five elements: 1) she is a member of a protected class; 2) she was subjected to unwelcome racial or sexual harassment; 3) the harassment was based on race or sex; 4) the harassment created an intimidating, hostile, or offensive work environment that unreasonably interfered with her work performance; and 5) employer liability.  *See Hafford v. Seidner*, 183 F.3d 506, 512

9

(6th Cir. 1999); *see also Crawford v. Medina Gen'l Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996) (noting that "[t]he elements and burden of proof are the same, regardless of the discrimination context in which the claim arises."). To determine if a reasonable person would find a work environment "hostile" or "abusive," courts look at "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993); *Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 568 (6th Cir. 2021).

### A. The Alleged Harassment Was Not Based on Plaintiff's Race or Sex

First, Defendant maintains that Plaintiff's allegations of harassment are not based on her race or sex. In support of her general harassment claims, Plaintiff notes numerous instances of alleged harassment, including the following: (1) coworkers "slung" panels towards her "creating a difficult and dangerous working environment," ECF No. 45 at Pg ID 532, ¶ 12; (2) coworkers teased her on numerous occasions, including referring to her as "Crazy Crystal" and telling her to "stay away from me," calling Plaintiff "contagious," *see id.* at ¶¶ 11, 27; (3) a supervisor would not allow her to sit on a stool, drink water, or use her cell phone while she was working; (4) a coworker showed her inappropriate pictures and engaged in "explicit" conversations in Plaintiff's presence; (5) supervisors had a

few conversations with her about missing a part on the line where she felt "singled

out," ECF No. 49 at Pg ID 1540; (6) a supervisor made a gesture, which Plaintiff

perceived as both "flipping [her] off" and "a gang sign," and the supervisor

allegedly "looked" at her in a "threatening and intimidating manner,"  Pl. Dep.

ECF No. 48-2 at Pg ID 702, 753; (7) she experienced two incidents of lost

overtime; (8) plaintiff experienced multiple delays in co-workers relieving Plaintiff

at her workstation to use the restroom; and (9) a nurse employed by Defendant

allegedly argued with her about her wrist pain.

Plaintiff also recycles many of the same arguments above to support her

argument that she experienced racial harassment: (1) a supervisor telling Plaintiff

that she "couldn't sit down" while on the production line amounted to racially

derogatory conduct, Ex. W., ECF No. 48-24 at Pg ID 1304; (2) delays in receiving

relief to go to the bathroom, not being allowed to have her water bottle or cell

phone while on line were tantamount to "Jim Crow Retaliation," Ex. X., ECF No.

48-45 at Pg ID 1308, which Plaintiff asserts, "took her back to the days of water

fountains and separate bathrooms," Ex. A., ECF No. 48-4 at Pg ID 919; (3)

Plaintiff's personal belief that a supervisor "doesn't like black people working

here," Ex. W., ECF No. 48-24 at Pg ID 1305; (4) Plaintiff mentioned having a

"feeling" of "racism," because a supervisor "look[s] at [her] like he wants to kill

[her] all the time," *see id*.; (5) Plaintiff complained that "white people can . . . wear

11

earbuds," but Plaintiff is unable to, which is a rule that singled her out, *see id.* at Pg ID 1308; (6) a supervisor engaged in a "racial violent act" by "looking at [her] like he wants to kill [her] and allegedly throwing a screener, Ex. Y., ECF No 48-26 at Pg ID 1310; (7) a coworker once asked her "Count them panels, how many is that," speaking in a manner "as if [Plaintiff] were her slave," Ex. BB., ECF No 48-29 at Pg ID 1324; and (8) the same coworker a few days later asked Plaintiff "where you workin at today" in a "black Ebonics overtone," *see id.*

Plaintiff does not provide any evidence—direct or circumstantial—that supports, or reasonably infers, Defendant's actions were based on her sex. As the Supreme Court noted in *Oncale v. Sundowner Offshore Services, Inc.*:

> workplace harassment . . . is not automatically discrimination 'because of sex' merely because the words used have sexual content or connotations ... [rather,] [t]he critical issue ... is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of other sex are not exposed.

523 U.S. 75, 80 (1998). This evidence is crucial in determining whether discriminatory harassment is present. "[I]t is important to distinguish between harassment and discriminatory harassment in order to 'ensure that Title VII does not become a general civility code.'" *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000) (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, (1998)).

Plaintiff also fails to provide sufficient evidence that any alleged harassment was based on her race.  As this Circuit notes, "the conduct of jerks, bullies, and persecutors is simply not actionable under Title VII unless they are acting because of the victim's gender [or race]."  *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 467 (6th Cir. 2012) (alteration from original); *see also Kalich v. AT&T Mobility, LLC*, 679 F.3d 464, 471 (6th Cir. 2012) (holding conduct that is demeaning or humiliating but does not evidence hostility towards a protected class is not actionable under Title VII).

## B.  Plaintiff's Alleged Harassment Was Not Severe or Pervasive

Second, Defendant maintains that Plaintiff's "allegations are not objectively severe or pervasive enough to survive summary judgment."  (ECF 48 at Pg ID 48.) To determine whether allegations of workplace harassment are "sufficiently severe or pervasive to constitute a hostile work environment . . . court[s] must consider the totality of circumstances." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999) (citing *Harris*, 510 U.S. at 17).  The burden of proof is high under the Sixth Circuit.  *See Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017) (noting that "this court has established a relatively high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory.").

 For example, in *Williams v. CSX Transp. Co.*, the plaintiff complained about her two supervisors who openly made racist comments, including "this

13

country should 'get rid of" Jesse Jackson and Al Sharpton because without those two 'monkeys' the country 'would be a whole lot better,'" asking the plaintiff "why black people cannot name their children 'stuff that people can pronounce, like John or Sue,'" and directly telling the plaintiff that African American people should "go back to where [they] came from." 643 F.3d 502, 506 (6th Cir. 2011). There, the court ruled in favor of the plaintiff's employer and concluded that although the supervisor's racist comments were "insensitive, ignorant, and bigoted," they were not considered "severe" or "pervasive" enough to amount to a hostile work environment. *Id*. at 513. If the plaintiff in *Williams* could not meet the burden of proving racial harassment in the face of overt racial comments, then Plaintiff in this case surely cannot with only assumptions and "feeling[s]" of "racism." (*See* Ex. W., ECF No. 48-24 at Pg ID 1305.)

In addition to her other claims, Plaintiff alleges numerous sexual harassment claims against Defendant, including the following: (1) a claim that someone— while assisting her into an ambulance after Plaintiff hurt her wrist—pushed Plaintiff by the "butt cheeks," despite responding "I don't know" when Ms. Mau asked who pushed her, Ex. W., ECF No. 48-24 at Pg ID 1305; (2) a coworker engaged in highly inappropriate conversations about sex and genitalia on a few occasions and showed Plaintiff two sexual pictures; (3) a coworker commented, "[s]ince you can't keep AJ's name out of your mouth, how about you have AJ's

nuts in your mouth," Ex. N., ECF No. 48-15 at Pg ID 1292, which Plaintiff

explained, "made me feel like he is going to rape me." (Ex. Y., ECF No. 48-29 at

Pg ID 1310.)

The Court finds that Plaintiff's sexual harassment, or her overall harassment

claims, do not rise to the level of being "severe or "pervasive."  Many of the claims

noted above merely amount to either minor workplace disputes or uncomfortable

moments, but nothing that even approaches the line of being a violation of Title

VII or the ELRCA.  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53,

68 (2006) (concluding that "petty slights, minor annoyances, and simple lack of

good manners" are not actionable under Title VII as they "often take place at

work"); *see e.g., Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 562 (6th Cir.

2021) (concluding that numerous comments about the size and appearance of the

plaintiff's breasts over a fifteen-month period, including that they looked "sloppy"

and were "drooping," did not amount to an actionable sexual harassment claim.);

*Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 790 (6th Cir. 2000) (concluding

that "several dirty jokes" told in the plaintiff's presence, defendant's "verbal sexual

advance," and a "one-time reference to plaintiff as 'Hot Lips'" did not amount to

sexual harassment).

## C.  Defendant's Liability

Courts recognize two standards for employer liability under Title VII: one standard for supervisors and one standard for co-workers.  *See Doe v. City of Detroit, Mich.*, 3 F.4th 294, 301 (6th Cir. 2021).  When the alleged harasser is a supervisor, "the employer is vicariously liable for the hostile work environment." *Id.* (citing *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 348 (6th Cir. 2005). However, when committed by a coworker, "the employer is liable only 'if it knew or should have known of the charged sexual [or racial] harassment and failed to implement prompt and appropriate corrective action." *Id*.  (quoting *Hafford*, 183 F.3d 506 at 513).

For a court to find an employer liable, the employer's response to a coworker's harassment must "manifest indifference or unreasonableness in light of the facts the employer knew or should have known."  *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 338 (6th Cir. 2008) (internal quotation omitted).  Whether the employer's corrective action is deemed appropriate varies according to the "severity and persistence" of the alleged conduct.  *See West v. Tyson Foods, Inc.*, 374 F. App'x 624, 633 (6th Cir. 2010).  For guidance on determining whether an employer's corrective action is reasonable, the Sixth Circuit noted facts to consider:

> Steps that would "establish a base level of reasonably appropriate corrective action" may include promptly

16

initiating an investigation to determine the factual basis for the complaint, "speaking with the specific individuals identified by [the complainant], following up with [the complainant] regarding whether the harassment was continuing, and reporting the harassment to others in management."

*Waldo v. Consumers Energy Co.*, 726 F.3d 802, 814 (6th Cir. 2013) (quoting *West*, 374 F. App'x at 633).

Here, Defendant maintains that it "took prompt, thorough, and continuing efforts to investigate Plaintiff's complaints." (ECF No. 48 at Pg ID 637.) In addition to the numerous complaints, months-long investigation, interviewing "100 employees," taking 40 witness statements, meeting with Plaintiff to discuss the allegations a total of seven times, and involving HR professionals from one of Defendant's other locations, the Defendant also states that it conducted a training on "zero-tolerance" policy, which Plaintiff begrudgingly concedes occurred. (ECF No. 49 at Pg ID 1530.) The Court is satisfied that Defendant's corrective action was reasonably appropriate given the nature of the ongoing, numerous, and in many cases, vague complaints of harassment by Plaintiff. As such, Plaintiff's claims of a hostile work environment based on race and sex fail as a matter of law because Plaintiff did not provide sufficient evidence to prove all prima facie elements as required. *See Hafford*, 183 F.3d at 512.

17

## III.    Retaliation Claims

To establish a prima facie case of retaliation under Title VII or Michigan's

ELCRA, an employee must show "(1) [s]he ... engaged in protected activity, (2)

the employer knew of the exercise of the protected right, (3) an adverse

employment action was subsequently taken against the employee, and (4) there

was a causal connection between the protected activity and the adverse

employment action." *Laughlin v. City of Cleveland*, 633 F. App'x 312, 315 (6th

Cir. 2015) (quoting *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir.

2008)); *Garg v. Macomb Cnty. Comm. Mental Health Servs.*, 696 N.W.2d 646, 653

(Mich. 2005).  If there is no adverse employment action, courts must also

determine whether "the plaintiff was subjected to *severe* or *pervasive* retaliatory

harassment by a supervisor." *Willey v. Slater*, 20 F. App'x 404, 405–06 (6th Cir.

2001) (emphasis added).

In the Amended Complaint, Plaintiff maintains that she experienced

retaliation by Defendant's "instituting baseless disciplinary proceedings, failing to

investigate Plaintiff's numerous Complaints, and issuing poor performance

evaluations despite Plaintiff's excellent work performance."  (ECF No. 45 at Pg ID

544, ¶ 74.)  Because the question of whether Plaintiff has presented sufficient, if

any, evidence of an adverse employment action has been addressed, *see supra* Part

I., the Court will not re-address that here.  Furthermore, after reviewing the entire

18

record, there is no evidence that Plaintiff experienced any form of retaliation from her supervisors.  *See e.g., White*, 548 U.S. at 54 (discussing the purpose of the "anti-retaliation provision" of Title VII and noting that the Supreme Court "refers to *material* adversity to separate significant from trivial harms.") (emphasis in original).  Thus, because the Court finds no evidence of adverse employment action or retaliatory harassment, Plaintiff cannot establish elements of a retaliation claim under Title VII and Michigan's ELCRA: the claim fails as a matter of law.

## CONCLUSION

For these reasons, even drawing all inferences from the evidence in the light most favorable to Plaintiff, the Court finds no genuine issue of material fact as to whether Plaintiff suffered any disparate treatment, experienced a hostile work environment based on race or sex, or was subjected to any form of retaliation in violation of either Title VII or Michigan's ELCRA.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 48) is **GRANTED**.

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: March 8, 2023

19